**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JOE HAND PROMOTIONS, INC.,
  Plaintiff,

          v.

THE LEAGUE LLC d/b/a THE LEAGUE TAVERN,
  Defendant.

Civil Action No.
1:19-cv-01068-SDG

**ORDER**

Before the Court are Plaintiff's application for default judgment against Defendant [ECF 22] and Defendant's motion to open default and to dismiss [ECF 23]. For the following reasons, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

Plaintiff initiated this action on March 7, 2019 against The League LLC and Mindy Hall.[1] In its Complaint, Plaintiff contends that it specializes in distributing and licensing premier sporting events to commercial locations and that it had exclusive commercial distribution rights to broadcast *Ultimate Fighting Championship 223: Khabib v. Iaquinta* in the United States (the Program).[2] The

---

[1]   ECF 1.

[2]   *Id.* ¶¶ 1, 7–8.

nationwide telecast of the Program took place on April 7, 2018.[3] Plaintiff further asserts that it entered into agreements with various commercial establishments, allowing them to exhibit the Program in exchange for a fee.[4] The League, however, did not enter into such a contract and did not have permission to exhibit the Program.[5] Despite this, Plaintiff alleges that, "[b]y unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system," The League "willfully intercepted or received" the Program and "then unlawfully transmitted, divulged and published" it.[6] Plaintiff argues that this "piracy" infringed on its exclusive rights.[7]

The Court's jurisdiction is based on a federal question under 28 U.S.C. § 1331, since Plaintiff asserts violations of the Communications Act of 1934 as amended.[8] Specifically, Plaintiff alleges that The League violated 47 U.S.C. § 605.[9] Alternatively, Plaintiff claims that The League's "unauthorized exhibition of the

---

[3]   *Id.* ¶ 1.

[4]   *Id.* ¶ 9.

[5]   *Id.* ¶ 10.

[6]   *Id.* ¶ 11.

[7]   *Id.* ¶ 13.

[8]   *Id.* ¶ 4.

[9]   *Id.* ¶ 16.

Program" violates 47 U.S.C. § 553.[10] Both statutes provide for a private right of action.[11] Plaintiff seeks statutory damages, as well as attorneys' fees, costs, and interest.[12]

After several unsuccessful attempts to serve Mindy Hall, Plaintiff ultimately dismissed the claims against her on August 15, 2019.[13] It unsuccessfully attempted to serve The League with the summons and complaint twice—via Mindy Hall at an address in Marietta.[14] The proof of service for the second failed attempt states: "Walden David at the League took over in August from the League Tavern. He stated that he does not know Mindy Hall and she no longer has anything to do with the business."[15] Service on The League was purportedly effected through the Georgia Secretary of State on April 26, 2019.[16] There is no indication in the record that Plaintiff ever attempted to serve The League through its president, another officer, or a managing agent.

---

[10]   *Id.* ¶ 17.

[11]   *Id.* ¶¶ 16–17.

[12]   *Id.* at 6–7.

[13]   ECF 21.

[14]   ECF 7 (attempted service on March 26, 2019); ECF 8 (attempted service on April 16, 2019).

[15]   ECF 8, at 2.

[16]   ECF 9 (reflecting purported service on Georgia Secretary of State).

On May 14, 2019, Plaintiff applied for a clerk's entry of default against The League pursuant to Fed. R. Civ. P. 55(a).[17] A default was entered by the clerk the next day.[18] Plaintiff purported to serve The League with a copy of the application, directed to Hall at the same Marietta address where had Plaintiff attempted to perfect service of process.[19] On August 16, 2019, Plaintiff filed a motion for default judgment against The League based on the clerk's May 15 entry of default.[20] To that point, The League had not appeared in the case.[21] Plaintiff again attempted to serve the motion on The League via Hall at the Marietta address.[22]

On August 26, 2019, The League filed a motion to open the clerk's entry of default under Fed. R. Civ. P. 55(c).[23] Although not included in the motion itself, The League's supporting brief also argues that the action should be dismissed under Fed. R. Civ. P. 12(b)(5) because Plaintiff failed to timely perfect service.[24]

---

[17] ECF 10.

[18] ECF 11.

[19] ECF 10, at 3 (certificate of service).

[20] ECF 22.

[21] *Id.* ¶ 2. *See also generally* Docket.

[22] *Id.* at 8.

[23] ECF 23.

[24] ECF 23-1; *id.* at 1, 4–6.

Plaintiff did not respond to The League's motion. The League also filed an opposition to Plaintiff's motion for default judgment.[25]

## II. LEGAL STANDARD

### a. Default Judgments

Rule 55 governs default judgments. When a defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Default judgments are generally entered by the court. Fed. R. Civ. P. 55(b)(2). The Court may set aside a default or a default judgment for good cause. Fed. R. Civ. P. 55(c).

There is a strong policy in this circuit to decide cases on their merits, rather than through default. *Worldstar Commc'ns Corp. v. Feltman (In re Worldwide Web Sys., Inc.)*, 328 F.3d 1291, 1295 (11th Cir. 2003) (indicating circuit has "a strong policy of determining cases on their merits and we therefore view defaults with disfavor"); *Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 481 (11th Cir. 2015) ("'Entry of judgment by default is a drastic remedy which should be used only in extreme situations.'") (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). When a defendant has entirely failed to appear or defend against a well-pleaded complaint, however, entry of default judgment is appropriate. *Nishimatsu Constr.*

---

[25] ECF 25.

*Co., Ltd., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (entry of default judgment in favor of plaintiff warranted only if there exists "a sufficient basis in the pleadings for the judgment entered").[26]

### b.   Service of Process

Rule 4 provides, among other things, that service on a defendant can be made through following the state law for service of process in the state where the Court sits. Fed. R. Civ. P. 4(e)(1). While this specific section applies to individuals, the same process may also be used to serve corporations. Fed. R. Civ. P. 4(h)(1)(A). Further, a corporation may be served under Rule 4 by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law . . . [and] also mailing a copy of each to the defendant." Fed. R. Civ. P. (4)(h)(1)(B).

The Georgia counterpart to the federal rule for service of process, O.C.G.A. § 9-11-4, provides that a corporation may be served through the Georgia Secretary of State when service "*cannot be had*" through an officer, managing agent, or registered agent of the corporation. O.C.G.A. § 9-11-4(e)(1)(A) (emphasis added).

---

[26]   *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, (11th Cir. 1981) (adopting as binding precedent all decisions handed down by former Fifth Circuit prior to October 1, 1981).

This requires a plaintiff to attempt to serve the specified officers or agents before substituting service through the Secretary of State. *Stone Exchange Inc. v. Surface Tech. Corp. of Ga.*, 269 Ga. App. 770, 772 (2004). Further, the Georgia rule for substitution of service requires a plaintiff to certify to the Georgia Secretary of State that (1) the process has been forwarded by registered mail or statutory overnight delivery to the corporation's registered agent or registered office; (2) service could not be effected on that agent or office; and, (3) the corporation appeared to have failed to maintain a registered agent or office as required by Georgia law. O.C.G.A. § 9-11-4(e)(1)(A).

### III.   ANALYSIS

#### a.   There Is Good Cause to Set Aside the Entry of Default.

The League filed its motion to open the default entered by the clerk on August 26, 2019. Plaintiff did not file a response. Therefore, the Court treats The League's motion as unopposed. LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

##### i.   The Clerk's Entry of Default Was Premature.

In support of its application for default, counsel for Plaintiff attested that The League had been served on April 26, 2019 and that its answer was therefore

due on May 10, 2019.[27] This, however, is incorrect. The summons itself provided that The League's answer was due "[w]ithin 21 days after service of this summons."[28] The Federal Rules of Civil Procedure further provide that a defendant must file an answer "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Twenty-one days after April 26, 2019 was May 17.[29] Therefore, without regard to whether service was itself properly effected, Plaintiff's application to the clerk on May 14 was premature and no entry of default should have been made.

### ii. Plaintiff Did Not Properly Serve The League.

Even if the clerk's entry of default had been proper, The League has shown good cause for opening it. The League's motion argues that Plaintiff never (1) served The League's registered agent with service of process or (2) made a showing of good cause for the attempted service through the Georgia Secretary of

---

[27] ECF 10-1, ¶¶ 3, 4.

[28] ECF 9, at 1.

[29] Fed. R. Evid. 201(b)(2) (court may judicially notice fact if it is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

State.[30] The League further argues that, when it did finally receive actual notice of the clerk's default, it retained counsel and sought to open the default.[31]

While there were numerous ways in which Plaintiff could have properly effected service on The League, it did not follow any of them. Plaintiff could have:

- delivered the summons and complaint to The League's registered agent (under Fed. R. Civ. P. 4(e)(2)(C) or O.C.G.A. § 9-11-4(e)(1)(A));

- delivered process to one of The League's officers or managing agents *and* mailed a copy to The League (Fed. R. Civ. P. 4(h)(1)(B));

- delivered process to The League's president or an officer (O.C.G.A. § 9-11-4(e)(1)(A)); or,

- substituted service on the Georgia Secretary of State (with certain required certifications) *and* mailed a copy to The League (under O.C.G.A. § 9-11-4(e)(1)(A)).

Plaintiff attempted but failed to serve The League by serving Hall twice at the Marietta address.[32] And, in attempting to substitute service on the Secretary of State, Plaintiff did not follow the proper procedure.

Serving the Secretary of State under Rule 4 required that Plaintiff also mail a copy of process to The League. Fed. R. Civ. P. 4(h)(1)(B). There is no evidence in

---

[30] ECF 23-1, at 2.

[31] ECF 23, at 2.

[32] ECF 7, 8.

the record that it did so. Such substituted service under O.C.G.A. § 9-11-4 required that Plaintiff certify it could not effect service on The League's registered agent or at its registered office. O.C.G.A. § 9-11-4(e)(1)(A). Plaintiff did not do so. Nor did Plaintiff certify that it had sent a copy of process to The League by registered mail or statutory overnight delivery. *Id.*

Thus, The League was never properly served. In addition, default may always be set aside on a showing of "good cause." *Microsoft Corp. v. Computer Imaging Servs., Inc.*, 1:06-cv-1666-WSD, 2007 WL 779076, at *1 (N.D. Ga. Mar. 8, 2007) (citing Fed. R. Civ. P. 55(c)). "In determining whether good cause exists, courts focus on three factors: (1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the non-defaulting party; and (3) whether the party in default has a meritorious defense." *Robinson v. Tomy Grp. Atlanta LLC*, 1:14-CV-1467-LMM, 2015 WL 12860552, at *1 (N.D. Ga. Mar. 11, 2015) (internal quotation marks omitted) (citation omitted). *See also Microsoft Corp.*, 2007 WL 779076, at *1.

Here, there is no showing that The League's conduct was willful, although there was confusion about the attempts to serve Mindy Hall as The League's agent (discussed further below). The League has presented evidence that it moved to open the default soon after learning of it and Plaintiff will suffer no prejudice from

having to defend this action on the merits.[33] *Worldstar Commc'ns Corp.*, 328 F.3d at 1295 (strong policy to determine cases on their merits); *Fortson*, 602 F. App'x at 481. Further, The League arguably has meritorious defenses.[34]

The Court therefore concludes there is good cause under Rule 55(c) to open the default entered by the clerk since it was improperly entered too early and because there is no evidence that Plaintiff properly served The League with process. Accordingly, to the extent The League seeks to open the default, its motion is **GRANTED**. Given The League's showing of good cause, Plaintiff's failure to respond to The League's motion to open the default, and the Court's ruling, Plaintiff's application for default judgment against defendant [ECF 22] is **DENIED**.

### b. The Court Will Not Dismiss the Action for Failure to Timely Perfect Service.

An action is subject to dismissal without prejudice if a defendant is not served within 90 days after the complaint is filed:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the

---

[33] ECF 23-2, ¶¶ 9–12.

[34] *Id.* ¶ 10.

>plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

The League argues that Rule 4 requires service of process within 120 days. This is incorrect. The Rule was amended in 2015 to reduce the time for service from 120 days to 90 days.[35] However, despite the seemingly mandatory dictates of this rule, dismissal is not *always* required when a plaintiff fails to timely serve a defendant. This is because the rule provides that the Court may, rather than dismissing, direct a plaintiff to effect service within a specified time. *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129 (2005) (upholding district court's refusal to dismiss complaint where plaintiff had not shown good cause) (citing, *inter alia*, *Henderson v. United States,* 517 U.S. 654, 663 (1996)). This is true even though Plaintiff has not shown good cause for its failure to timely serve The League. *Horenkamp*, 402 F.3d at 1132; Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (indicating rule authorizes court to extend time for service without good cause shown).

Here, Plaintiff attempted service on The League by trying to serve Hall twice at The League's business address in Marietta (which is also the address for Hall as

---

[35] Fed. R. Civ. P. 4(m) advisory committee's note to 2015 amendment.

registered agent).[36] Plaintiff's failure to personally serve The League through its registered agent may stem from Mindy Hall's change of name to Mindy Fortson.[37] In fact, there is conflicting evidence about whether Hall/Fortson was still associated with The League at the time of service. The proof of service for the second failed attempt to serve process reflects that the process server was told Hall "no longer has anything to do with the business."[38] But Fortson has confirmed that she *is* the registered agent for The League and that the address where Plaintiff tried to serve The League was indeed the correct address for service.[39] Why the process server was turned away when he was, in fact, at the correct address is not clear from the record. Nor is it clear why no one seemed to recognize that Hall and Fortson are the same person. There is no record evidence about her name as listed on the Georgia Secretary of State's website for The League's registered agent at the time Plaintiff attempted service. In fact, the evidence provided by The League shows that, as of the time the company sought to open the default, the Secretary

---

[36] ECF 7; ECF 8; ECF 23-2 ¶¶ 2, 6.

[37] ECF 23-2, at 1 (indicting Fortson was formerly known as Hall).

[38] ECF 8, at 2.

[39] ECF 23-2, ¶¶ 2, 6. *See also* ECF 23-1, at 2.

of State website showed the registered agent's name as "Mindy Hall," not Mindy Fortson.[40]

Under these circumstances, and despite the fact that Plaintiff did not respond to The League's motion to dismiss, the Court concludes that it is appropriate to extend Plaintiff's time to properly serve The League with process. Accordingly, The League's motion is **DENIED** to the extent that it seeks dismissal of this action.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's application for default judgment against Defendant [ECF 22] is **DENIED** and Defendant's request to open the default is **GRANTED in part** and **DENIED in part** [ECF 23].

---

40  ECF 23-2 Ex. 1.

The Clerk is **DIRECTED** to open the default. Plaintiff is **DIRECTED** to properly effect service on The League within 14 days after entry of this Order. The League shall respond to the Complaint within 14 days after service. The parties shall submit a Joint Preliminary Report and Discovery Plan within 14 days from the date The League files its answer. Discovery will commence 30 days after the League files its answer.

**SO ORDERED** this the 1st day of April 2020.

Steven D. Grimberg
United States District Court Judge